```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
STEFAN SAGRAMSINGH, as guardian for minor                         :
child, E.S.,                                                      :
                                                                  :   **MEMORANDUM DECISION**
                                        Plaintiff,                :   **AND ORDER**
                                                                  :
                    - against -                                   :   19-cv-4627 (BMC)
                                                                  :
WELFARE FUND OF THE INTERNATIONAL                                 :
UNION OF OPERATING ENGINEERS LOCAL                                :
15, 15A, 15C & 15D et al.,                                        :
                                                                  :
                                        Defendants.               :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff brings this action on behalf of minor child E.S. for unpaid benefits pursuant to a welfare fund plan administered by defendants. Defendants move to dismiss the amended complaint. Because plaintiff's amended complaint, read liberally, states a valid ERISA claim, defendants' motion to dismiss is denied.

## BACKGROUND

Plaintiff is a participant in and beneficiary of an Employee Retirement Income Security Act of 1973 ("ERISA") welfare plan sponsored and administered by defendant Local 15 Welfare Fund. Through plaintiff, E.S. receives insurance benefits under the welfare plan as well.

E.S. has a history of headaches, vomiting, and papilledema. About two and a half years ago, E.S. was taken to the emergency room with a severe headache and vomiting. An MRI and CT Scan revealed lesions around E.S.'s brain. After an extensive diagnostic workup, doctors were still unsure about the cause of the lesions.

Dr. Mark Mittler, a pediatric neurosurgeon with Long Island Neurosurgical Associates, P.C. ("LINA"), recommended that E.S. undergo a right frontal craniotomy for a cystic necrotic mass, an intradural frameless stereotactic procedure, a titanium cranioplasty, an intraoperative ultrasound, and an intraoperative CT scan. Plaintiff describes these procedures as medically necessary and consented to their performance.

Prior to operating, Dr. Mittler received authorization from defendant Local 15 Welfare Fund to perform the surgeries. Dr. Mittler was the only qualified pediatric neurosurgeon with privileges at the hospital in which E.S. was admitted, although he was an out-of-network provider under the welfare plan. Upon Dr. Mittler completing the procedures, LINA billed Local 15 Welfare Fund, through Empire Blue Cross Blue Shield, for medical services in the amount of $93,016. Local 15 Welfare Fund paid $10,268 towards these charges, leaving plaintiff to pay the $82,748 balance.

Once it was clear Local 15 Welfare Fund did not intend to pay the difference, LINA sent an agent on its behalf to challenge that decision through the Fund's appeals process. The agent filed a written appeal "contesting the unconscionably low payment received." The agent further argued "(i) that the services provided were emergent; (ii) the payment received was below the standard industry rates for emergent treatment, and (iii) LINA and Dr. Mittler were not subject to any fee reductions as they were out-of-network medical providers."

Local 15 Welfare Fund denied the appeal, stating that the "claim was paid by the Fund at 80% of the Fund[']s fee schedule for a non-participating provider." In response, LINA's agent filed a second, "final level" appeal arguing the same points as before. Local 15 Welfare Fund denied this appeal as well, with the decision stating that the "specific reason for denial of

benefits upon review is that under the guidelines of the Welfare Plan, this claim was paid in accordance with the non-participating provider provision."

Plaintiff maintains that, although the appeal decisions "alluded to, and purported to quote, direct language from the Plan while also alluding to a purported fee schedule . . . Defendant Local 15 Welfare Fund failed to provide the Plan documents or any fee schedule." He further alleges that, "[w]hile Defendants were aware that LINA was an out-of-network provider, Defendants never disclosed to Plaintiff that they did not intend to pay for the medically-necessary surgical procedures at the time of the authorization." Plaintiff characterizes defendants' actions as providing "illusory coverage" to plaintiff and E.S., which "induced Plaintiff to go forward with" the surgery.

Based on the foregoing, plaintiff alleged in his original complaint several alternative claims for relief to obtain the balance of the denied benefits, including claims for wrongful denial of benefits, breach of fiduciary duty, failure to establish or maintain reasonable claims procedures, and failure to establish a proper summary plan description. Of note, plaintiff claimed that "Defendants' decision to pay only a fraction of LINA's usual, customary, and reasonable bills was wrongful."

Defendants moved to dismiss the original complaint and I persuaded plaintiff to amend his pleadings to cure the alleged deficiencies. Specifically, I observed that the case presented facts that, intuitively, must state *some* claim for which relief can be granted; however, just one of the causes of action offered by plaintiff – breach of fiduciary duty – appeared to properly reflect the harm he suffered. A denial of benefits claim for relief seemed inappropriate because plaintiff did not point to an amount of money wrongfully denied to him under a specific plan provision. A claim for failure to establish or maintain reasonable claims procedures also missed the mark

3

because civil penalties are not available to plan beneficiaries for a "plan's failure to comply with the claims procedure regulation." See Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ., 819 F.3d 42, 45 (2d Cir. 2016). And a claim for failure to establish a proper summary plan description also insufficiently captured the inadequacies of the plan alleged by plaintiff in his complaint. Thus, I suggested that plaintiff consolidate his allegations into a single breach of fiduciary duty claim, believing that this theory of liability was appropriate to encompass the alleged facts and equipped to remedy any meritorious claim.

Plaintiff amended his complaint in accordance with my recommendation. The amended complaint is refashioned as a single cause of action for breach of fiduciary duty and co-fiduciary duty against Local 15 Welfare Fund, its board of trustees, and its individual trustees, in violation of 29 U.S.C §§ 1332(a)(3), 1104(a)(1), and 1105(a). It claims that defendants breached their fiduciary duties by, *inter alia*: (a) failing to issue an adverse benefit determination in accordance with the requirements of ERISA; (b) failing to disclose plan documents that outlined the fee schedule for out-of-network providers; (c) authorizing the procedures and then largely disclaiming payment for them; and (d) "setting the reimbursement rate unreasonably, unjustifiably and arbitrarily low for the benefits payable for the services rendered by LINA to patient."

Defendants move to dismiss the amended complaint.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In conducting the above analysis, the Court must accept as true all of the well-pleaded allegations contained in the complaint. Iqbal, 556 U.S. at 678. But this tenet "is inapplicable to legal conclusions." Id. "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

As an initial matter, because plaintiff's amended complaint drops Empire Blue Cross Blue Shield as a defendant, Empire's motion to dismiss is moot and thus denied on that basis.

As to the remaining defendants, plaintiff states a plausible claim for denial of benefits. In the original complaint, plaintiff alleged that "Defendants' decision to pay only a fraction of LINA's usual, customary, and reasonable bills was wrongful." More relevantly, in his amended complaint, plaintiff alleges that LINA's agent characterized the Fund's payment as "unconscionably low" and "below the standard industry rates." He further describes defendants' actions as "setting the reimbursement rate unreasonably, unjustifiably and arbitrarily low for the benefits payable for the services rendered by LINA to Patient."

These allegations are relevant to Local 15 Welfare Fund's representation that its fee schedule is based on data reflecting the usual and customary fees for the same procedures in the local medical community. Specifically, Local 15 Welfare Fund's summary description provides:

> **Out-of-network medical providers.** For active participants who choose to utilize an out-of-network physician, after the deductible has been met, the Welfare Fund will do one of the following . . . [1] Pay 80% of the Fund's *usual, customary and reasonable* fee schedule for that covered service or procedure.

(emphasis added.) In that same document, "usual, customary and reasonable charges" are explained in the following manner:

> The Plan pays benefits only to the extent that they are Usual, Customary and Reasonable (UCR). In general, this is the amount providers frequently accept as payment for the same service or procedure in your geographical area.
>
> The Fund is the sole determiner of UCR. It determines the usual, customary and reasonable acceptance fees based on data obtained from sources, such as MEDICODE, HIAA and other schedules for relevant zip code areas where the service is being provided.

Thus, plaintiff's amended complaint can be understood to implicate the reasonableness of the plan's fee schedule for the procedures undergone by E.S., as objectively compared to the usual and customary fees for the same procedures around the same geographic area. These allegations are not implausible.

I would not presume to know the customary rates charged for brain surgery in the New York metropolitan area. But defendants' estimates sound low, even considering the "multiple procedures" provision described in the plan's surgical benefits section. This conclusion is reinforced by LINA's representations that defendants' payment was *unconscionably low* and below the standard industry rates. Could it really be that Long Island Neurological Associates charges 600% more than the usual and customary fee for these same procedures? Possibly, but given the alleged facts, I can easily draw a plausible inference otherwise.

The foregoing states a viable claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). Although there does not appear to be much express authority on this specific theory of liability in the Second Circuit, several similar cases have been analyzed under the denial of benefits framework. For example, in Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 622-24 (2d Cir. 2008), the Court determined that a healthcare plan administrator's definition and application of its "UCR" (usual, customary and reasonable) provision was not arbitrary or capricious under ERISA § 502(a)(1)(B) – the subsection enabling a plaintiff to "recover benefits due to him under the terms of his plan." And in Schwartz v. Oxford Health Plans, Inc., 175 F.

Supp. 2d 581, 589 (S.D.N.Y. 2001), abrogated on other grounds by S.M. v. Oxford Health Plans (N.Y.), Inc., 94 F. Supp. 3d 481 (S.D.N.Y. 2015), the court "conclude[d] that Oxford's method for determining UCR in this case was not reasonable" under 29 U.S.C. § 1132(a)(1)(B).[1]

There remains the problem that, at my suggestion, plaintiff labeled his claim as a breach of fiduciary duty claim instead of a denial of benefits claim. Because plaintiff's factual allegations remained materially identical across his original and amended complaints, there is no need for him to further amend his pleadings merely to conform his claim for relief to this decision. I am deeming the amended complaint further amended to state a claim under 29 U.S.C. § 1132(a)(1)(B) for the reasons identified above.

## CONCLUSION

Prior defendant Empire Blue Cross Blue Shield's [19] motion to dismiss is denied as moot. Defendants' [16] motion to dismiss is denied.

**SO ORDERED.**

                                                                            U.S.D.J.

Dated: Brooklyn, New York
        February 20, 2020

---

[1] 29 U.S.C. § 1132(a)(1)(B) is the equivalent of ERISA § 502(a)(1)(B).